UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHRISGINA MOLLITT                                      PLAINTIFF

VS.                              CIVIL ACTION NO. 3:07CV437TSL-JCS

FRED'S STORES OF MISSISSIPPI, INC.                     DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

    This cause is before the court on the motion of defendant
Fred's Stores of Mississippi, Inc. (Fred's) for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure.
Plaintiff Chrisgina Mollitt has responded in opposition to the
motion, and the court, having considered the memoranda of
authorities, together with attachments, submitted by the parties,
concludes that the motion is well taken and should be granted.

    On August 7, 2006, plaintiff Chrisgina Mollitt was arrested
and charged with shoplifting from a Fred's store on Meadowbrook
Road in Jackson, Mississippi based on a criminal affidavit filed
against her by Rikardo Tripp, the assistant store manager of the
Fred's store.  On December 6, 2006, the case against plaintiff
came on to be tried.  By that time, however, Tripp was no longer
employed by Fred's and as he did not appear to testify against
her, Mollitt's attorney moved to dismiss the charge on the basis
that Mollitt was not able to confront her accuser.  The court
dismissed the charge, following which Mollitt brought this action

against Fred's alleging claims of malicious prosecution, false imprisonment, negligence and negligent and/or intentional infliction of emotional distress.  Fred's has now moved for summary judgment on all of plaintiff's claims.

In an affidavit submitted in support of Fred's motion, Rikardo Tripp, defendant's manager who initiated the criminal proceedings against Mollitt, provides his version of the events which led to the arrest and prosecution of Mollitt for shoplifting.  Tripp states that on the evening of August 7, a person associated with Fred's informed him that he had seen a lady putting items in her purse in the pharmacy area.  The person who so informed Tripp was Mitchell Keller, an independent contractor who was doing work for Fred's at the Meadowbrook store on that date.  Tripp began watching the woman, who was accompanied by another woman, and at some point approached her and asked her to accompany him to the back of the store, which she did.  Tripp called the police.  Initially, two male officers responded, who then awaited the arrival of a female officer to search Mollitt. That officer, according to Tripp, found a number of items in Mollitt's purse, including underwear, bandanas and glasses.  The officers told him to go to the police station to file an affidavit, which he did because he "truly and honestly believed that [Mollitt] was guilty of shoplifting and [he] wanted to see her brought to justice."

According to Mollitt's version, which she describes in her own affidavit, on the day of the incident in question, she and her partner, Latina Peterson, had been shopping earlier in the day at Fred's and had purchased some items.  That evening, the two went back to the shopping center where Fred's is located to order dinner at a Chinese take-out restaurant.  While waiting on their food, Mollitt and Peterson went to Fred's so that Peterson could show Mollitt some shoes she had seen earlier.  While in Fred's, Mollitt got a call from the Chinese restaurant letting her know her order was ready.  On the way out the door, Mollitt picked up two hats she liked and paid for them.  She proceeded to the restaurant to pick up her food, and then went to the car to wait for Peterson, who was still in Fred's.  Peterson called Mollitt on her cell phone and told her to come back into the store to look at some handbags she had found.  When Mollitt re-entered the store and joined Peterson at the handbags, she and Peterson were immediately accosted by a police officer, who said someone had seen her putting something in her purse and asked the women to accompany him to the rear of the store.  He then told the women he was waiting on a female officer to search them, and remarked to Peterson, "I don't know what we'll need for you; are you a boy or a girl?"  Mollitt asserts, "After the officer's comments, I did not feel that I was free to leave Fred's and, therefore, awaited the female officer's arrival."  With reference to Tripp, Mollitt

3

states, "I did not see or have any contact with Rikardo Tripp until he joined Latina Peterson and I with the officer at the back of the store and began making comments to the officer about my sexual preference," which comments made her feel "uncomfortable, intimidated and fearful."  According to Mollitt, after the female officer arrived, she asked to look in Mollitt's purse and Mollitt consented; the officer merely looked inside the purse without removing anything from it.

Although Mollitt ultimately declares that she at no time attempted to commit the crime of shoplifting at Fred's and that she "instead purchased everything [she] had in [her] possession," the police reports prepared by Jackson Police Officers Dewayne West and Robert Hubbard state that Mollitt's purse was searched and a number of items were removed from her purse, including bandanas and underwear.  Moreover, Officer West reports that upon being told she was suspected of shoplifting, Mollitt responded that she did have the items in her purse but that she did not place them there.

It is clear to the court from the evidence presented that plaintiff cannot prevail on her claim of malicious prosecution. "The elements of the tort of malicious prosecution are: (1) the institution of a proceeding (2) by, or at the insistence of the defendant (3) the termination of such proceedings in the plaintiff's favor (4) malice in instituting the proceedings

4

(5) want of probable cause for the proceedings and (6) the suffering of injury or damage as a result of the prosecution." Williams v. Jitney Jungle, Inc., 910 So. 2d 39, 41-42 (Miss. Ct. App. 2005)(citing McClinton v. Delta Pride Catfish, Inc., 792 So. 2d 968, 973 (Miss. 2001)).  There is no dispute as to the first three elements of plaintiff's malicious prosecution claim, as she was arrested for shoplifting based on the accusation of the Fred's manager, and the criminal proceeding against her was ultimately dismissed.  Defendant's motion focuses on the elements of probable cause and malice, which it submits plaintiff cannot establish.

"Probable cause in a malicious prosecution action requires the concurrence of an honest belief in the guilt of the person who is accused and reasonable grounds for such belief." Croft v. Grand Casino Tunica, Inc., 910 So. 2d 66, 74 (Miss. Ct. App. 2005) (citing Page v. Wiggins, 595 So. 2d 1291, 1294 (Miss. 1992)). Here, Tripp has presented his sworn affidavit attesting that he honestly subjectively believed that Mollitt had committed the offense of shoplifting.  "Therefore, the linchpin issue . . . is whether or not it was objectively reasonable, the second probable cause prong, for [Tripp] to file the criminal affidavit against [Mollitt] given the information that he had when [it] [was] filed."  Nassar v. Concordia Rod and Gun Club, Inc., 682 So. 2d 1035, 1045 (Miss. 1996) (citations omitted).  Here, it is undisputed that an independent contractor doing work for Fred's

5

had reported to Tripp that he had seen the plaintiff putting items in her purse.  Furthermore, Tripp states, and the police reports indicate, that a police officer searched Mollitt's purse and found that it contained items that came from Fred's.  Although Mollitt asserts in her affidavit that she had "purchased everything [she] had in [her] possession," she does not deny that she did not have a receipt for the items that were found in her purse.  Nor does she deny having told the officers, when informed she was suspected of shoplifting, that she did have items in her purse but that she did not place them there.  Given these circumstances, Tripp clearly had probable cause to swear out the criminal affidavit against Mollitt for shoplifting.[1]  Summary judgment will therefore be granted on her claim for malicious prosecution.[2]

---

[1]     Mississippi Code Annotated § 97-23-93 states: (1) Any person who shall wilfully and unlawfully take possession of any merchandise owned or held by and offered or displayed for sale by any merchant, store or other mercantile establishment with the intention and purpose of converting such merchandise to his own use without paying the merchant's stated price therefor shall be guilty of the crime of shoplifting and, upon conviction, shall be punished as is provided in this section.

(2) The requisite intention to convert merchandise without paying the merchant's stated price for the merchandise is presumed, and shall be prima facie evidence thereof, when such person, alone or in concert with another person, willfully:
(a) Conceals the unpurchased merchandise. . . .

[2]     The Mississippi Supreme Court has written:
The existence of probable cause, which involves only the

Mollitt has also asserted a claim against Fred's for false imprisonment, alleging that Fred's caused her to be unlawfully detained, arrested and imprisoned by falsely accusing her of shoplifting.  Summary judgment is in order on this claim, as well. Accepting as true Mollitt's version of events, she was initially confronted not by Tripp but rather by Jackson police officers who advised her that she had been accused of shoplifting and who asked her to accompany them to the back of the store.  Mollitt expressly asserts that because of certain comments by one of the officers, she did not feel free to leave and felt, instead, that she had to stay and await the arrival of a female officer so that she could be searched.  This occurred, according to Mollitt, before she ever saw Tripp; indeed, she explicitly declares, "I did not see or have any contact with Rikardo Tripp until he joined Latina Peterson and I with the officer at the back of the store . . . ."  Thus, based on Mollitt's own sworn testimony, it is clear that Mollitt was not detained by Tripp but rather by Jackson police officers. Moreover, to the extent that Tripp, by filing a criminal

---

conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable person would have instituted the proceeding.
Nassar v. Concordia Rod and Gun Club, Inc., 682 So. 2d 1035, 1042 -1043 (Miss. 1996) (quoting Page, 595 So. 2d at 1294).

affidavit, caused Mollitt to be formally arrested and imprisoned on charges of shoplifting, he acted with probable cause and therefore, plaintiff cannot prevail on her claim of false imprisonment.  See Hudson v. Palmer, 2007 WL 2472559, *9 (Miss. Ct. App. 2007) (holding that "to sustain a claim of false arrest a plaintiff must show that the defendant caused him to be arrested falsely, unlawfully, maliciously, and without probable cause" so that "if the plaintiff's arrest is supported by probable cause the claim must fail").

Plaintiff's further claims for negligence, negligent infliction of emotional distress and intentional infliction of emotional distress will also be dismissed.  These claims are premised on plaintiff's allegation that Tripp, defendant's representative, falsely accused her of shoplifting.  However, the court has concluded that Tripp had a reasonable basis for believing that plaintiff had shoplifted and for bringing criminal charges against her.

Accordingly, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 4th day of December, 2007.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

8